Good morning, your honors. May it please the court. My name is Molly Carlin. I'm an assistant federal public defender in the District of Arizona, and I represent the appellant, Bryan Rusnak. Now, this case was about one thing. Oh, excuse me, and I'd like to reserve three minutes. I'll watch the clock. You can watch your clock. This case was about one thing, whether someone other than Mr. Rusnak could have been responsible for the child pornography that was found on his laptop, his mother-in-law's laptop, and the family desktop computer. And there were unconcealed, obvious links to child pornography right on the family desktop and right on his mother-in-law's laptop. But didn't he present, he was able to present evidence that he thought others were responsible for accessing that or downloading it? Well, he did testify to that himself. However, the government put on his wife's hearsay statement that... Well, let's be clear. Mr. Rusnak, the defendant, called his wife. Is that right? I mean, that's how this was happened. The government never called Mrs. Rusnak. That's right, Judge Nelson. But the government obtained an order that precluded the defense from asking Mrs. Rusnak whether anyone else had been in the house. Then on cross, the government introduced her prior statement, which suggested that nobody else could have had access. So the government actually put itself in a better position than if she had never been called. Well, but there was a curative instruction on that, as well as... Well, I guess the curative instruction came in the closing. But they did allow redirect so that the defendant was allowed to clarify that, as I understand it, the testimony ended up being clear that Stephanie Rusnak did not testify as to anything about whether other people came over, but only said these are the people who are residing at the home. That's true, Your Honor. But the statement nonetheless suggested that her present testimony was that nobody else could have accessed the computers. Well, there were two statements, and she was allowed to clarify one of them, but not the other. Isn't that right? That's right, Your Honor. In other words, one of the statements was she had no idea how anybody could have done this, something to that effect. That's right. And the other was nobody else stayed in the house. That's right. And she was allowed to clarify what she meant by staying in the house, but she wasn't allowed to clarify the other. The whole thing was exceeded... Shouldn't have been cross-examination, but there was no objection on that ground. There was no examine... Excuse me. There's no objection on... I'm sorry to be clarifying. What I mean is it wasn't crossed. It had nothing to do with what had been presented affirmatively. The government was crossed. Yes, right. Right. That's right. And although the rules do allow for the opposing party to bring out new material, then that witness effectively becomes the... I want to say became the government's witness. So in that respect, the witness is treated as having been put on by the cross-examination. So what is your legal argument about all this? Sorry. What is your legal argument about all this? So we have the due process compulsive clause issue and the confrontation clause issue. On the confrontation clause... What's the due process? Oh, this notion that they couldn't find their case. Is that basically... Right. And the key point there, as with the confrontation clause, is that the government was able to create a false impression. And so the jury was left with... What was the false impression? Was the false impression that no one stayed at the home? Or was the false impression that, well, I just really didn't think anyone had the ability to access the child pornography on these computers? Well, I think it's both, Judge Nelson. And that's because, as Judge Burson pointed out, the first question was, you told the FBI that you didn't know of anyone else who could have done this. Well, had she been crossed or by the defense or been allowed to redirect on that point, then she would have said, yes, that's what I thought at the time. Maybe I hadn't really given any thought to who else could have had access. But now I've had the opportunity to do so. And so... It strikes me as an odd argument where this isn't just one computer that there was one access... Child pornography accessed one time. You have a computer, at least four different computers by my count, three different computers. Thank you for clarifying that for me. So we've got three different computers and at least one of them, it was accessed and downloaded in 2010. Something else was revised or looked at. I'm not sure what that means in 2013. Modified, I think was the term that was used. And I don't know what evidence there is about the last time it was accessed, but it doesn't seem like that far of a stretch here. If the only evidence here was that there was one instance or even a couple of instances, it seems like your client would have a better argument for prejudice. But here, considering all the evidence, it just doesn't seem like that much of a stretch for the jury to think it's highly unlikely that someone else accessed all of this. It could have been unlikely, Your Honor, but I do think it prejudiced the defendant. That is, the government's bringing out her prior statement and then not allowing for redirect on that point. Because instead of just having his testimony that other people had access, particularly Sgt. Chamberlain, you had his wife gutting his defense effectively by saying, you know, I told the FBI that nobody else, I didn't think of anyone else who had done this. But that's a true statement. That's what she did tell the FBI, correct? That is, but that was hearsay. I understand that. We'll have the government explain why they didn't admit that in an appropriate way. But at the end of the day, it wasn't a false statement. It's not like there was testimony that couldn't have conceivably come in in another way. I'm not sure you mean by what other way. Oh, it could have. You're right, Your Honor. It could have come in either if the government had called her, then presumably she would have testified. Yes. Or they could have just brought in the police record itself. Couldn't the government have brought the police officer in and put in the record itself? No, Your Honor, the record itself. It still would have been hearsay. Right, it still would have been hearsay. And now the government didn't have to do this. There were two ways the government could have brought this in permissibly. One, the government could have called her, even knowing that her testimony presently was going to appear to be different. And then it could have impeached her with her prior statement. Or the defense could have had the opportunity, either in the direct exam or the redirect exam, to clarify that hearsay and explain what, bring out what her present testimony was going to be. You haven't mentioned yet anything about the closing argument. Is that part of your argument? Yes, Your Honor, and there are two points in the closing argument that are critical and really were damaging to the case. But are related to the same problem. Sorry? But related to the same problem. Right. First, the government violated its agreement not to comment that his testimony was uncorroborated. Not only did it go there, but it said, effectively, her testimony contradicted his. He had no defense left. And I want to point the Court to the Fifth Circuit's decision in Kittleson, which is cited in our opening brief. In that case, the Court, the Fifth Circuit found both a due process violation and a confrontation clause violation, where the defense witness was not allowed to correct a false impression. In that case, the defense witness was another girl who had accused the defendant of molesting her, except this girl had recanted. Now, the government put on an officer whose testimony indicated that she had accused the defendant, but didn't indicate that she had recanted. And so the defense was then precluded from bringing that out in the Fifth Circuit in finding both a due process and confrontation clause. Well, it depends what the reason was. I mean, here the problem is that there was an agreement with regard to discovery, and this was essentially a sanction for violating the discovery agreement by putting her on at all. So your arguments have to account for the fact that there was a problem with putting her on in the first place. Yes, Your Honor, that's true. However, when we look at the door opening by the government, the government opened the door to... Yes, but that was... I mean, I suppose that the district court could have just not said you can't put her on at all. That actually would have been better. That would have put the defense in a better position. It would have just... Well, they didn't have to put her on. Well, that's true, but the defense... But what you're saying is, yes, but she was put on with strictures and the strictures weren't followed. That's exactly right, Your Honor. And I want to comment also briefly on the government's comment in closing, saying that the defense theory, what the defendant wants you to believe, is that his friend, who he's still friends with, went on his computer within reach of his baby and looked at child porn and did whatever he was going to do. And this was really damaging because... But it's sort of... I mean, it's sort of a true reflection, or at least a fair reflection, inference of the evidence. If you were going to accept his position that someone else accessed that... That's actually not the case, Your Honor. Because the baby... There was no evidence that the baby was... It was accessed while the baby was in the room. Is that the suggestion? Right. Or even that it was ever accessed in that room because, you know, we don't know... At a minimum. At a minimum, what we know is there was a computer... If he believed that someone else was accessing it, there was child pornography on his computer, that computer was accessible to anyone that would have sat there, and it was in a room with the child. So it seems like you were kind of straining at gnats here a little bit. Well, Your Honor, I think... While that's all true, what the government said in its closing was, what the defendant wants you to believe. In other words, jury, if you don't believe this, then you can't accept the defense theory, when that wasn't true at all because there was no evidence. Honestly, I don't even understand why that suggestion is worse than the acknowledged situation if, in fact, there is... I mean, why exactly does it matter whether he was using a computer next to a baby or not next to a baby? If the baby's sleeping, it's a baby. The baby's not going to see the pornography. That's true, Your Honor. I think the really damaging part of that is that the government said, reminded the jury, which was true, that the defendant said he's still friends with Chamberlain. Well, that's... But that's not really... I mean, that's true. He did say that. So that part of it is not a problem. That's true, but I think it would make him, you know, look like a pretty bad parent if he says, hey, I'm still friends with this guy who I think was... Well, but that's true, though. I mean, he did say he was still friends with the guy. That's true. And he does have two children now, so that part's true. That is true, but there was no evidence that would say that the jury has to believe that he, that Mr. Chamberlain did that near the baby. That's true, but what I'm saying is the part about him still being friends with him is unobjectionable. That's a true statement. That's a true statement, right. So the objectionable part apparently is that he was watching the... Maybe I just don't have the right sensitivities, but to me it just doesn't seem like such a terrible thing to say. I mean, if you think somebody's watching pornography in your house with two kids, what's the difference if it's next to the crib or not next to the crib? I see I'm running out of time, Your Honor, but just to quickly address that, I think that the suggestion that you would still be friends with someone who did that in the presence of your baby is... Well, let me say that I think your other arguments are stronger, but thank you very much. Thank you, Your Honor. All right. Good morning, Your Honors. May it please the Court, I'm Shelley Clemens with the U.S. Attorney's Office for the District of Arizona. The district court in this case did not err in finding that defense counsel's nondisclosure of Mrs. Rosneck's proposed testimony was for the purpose of gaining a tactical advantage. And as the Supreme Court held in... Everything a lawyer does in a trial is for a purpose of a tactical advantage, right? The question is whether it's permissible tactical advantage or an impermissible tactical advantage. Yes, Your Honor, I agree. And in this case, it was an impermissible tactical advantage because the defendant had joined in a disclosure agreement with the government wherein he agreed that he would equally disclose his witnesses as well as a summary of testimony that was not already included in either notes or reports. And in this particular case, he chose not to do it. And clearly... Well, he chose not to do it because he thought the government was going to put her on. I mean, that's really what happened. She was on... I mean, Stephanie Rosneck was on the government's witness list. So it's not... I mean, this is a different case. You're right that the defendant had said, I'm not going to call any witnesses. I'm just going to testify myself. But it's not total surprise that the government wouldn't have been prepared to deal with Stephanie Rosneck's testimony. We would have been prepared to deal with Stephanie Rosneck's testimony as to what we already knew. However, in this particular case, defense counsel announced eight days prior to trial he would only call his client. And if the government did try to call Mrs. Rosneck, he would object, presumably on marital privilege grounds. Then... Which may have been why the government didn't call her or, you know, it doesn't really matter. Well, apparently the reason she didn't call her was because they knew she was going to say something else. At that point, the government had been made aware that she was going to say something else. However, Mrs. Rosneck refused to tell the government what the change in her testimony was going to be. The government specifically asked her who she was going to name as this third party when she had maintained all along that nobody else had access to computers. And not only did she refuse to tell them, but she referred them to defense counsel. I don't think there's really a question, ultimately, that the government was put in, you know, an improper position here. However, it seems as if the government exacerbated that a bit on the cross-examination. These are some pretty basic violations that happened here. And I'd be interested to know, do you agree that the government went beyond the scope of the direct in the questions that it asked on cross-examination? I would agree that it went beyond the scope of direct. However, when evidence is admissible... Isn't that enough? I mean, two things. Number one, they solicited hearsay testimony, which could have theoretically been brought in in another way. But setting that aside, the point is they solicited hearsay testimony. They knew it was going to be hearsay testimony. And they did that beyond the scope of the direct examination. Do you agree with both those statements? No. Okay, go ahead. In this case, the defense counsel, when this whole issue of Mrs. Rusneck's, of this change in testimony coming out, defense counsel, at that point, blamed the government for not knowing about this third-party information, claiming that the government didn't do a sufficient investigation. I'm paraphrasing what he said. And at that point, the evidence would be admissible to show the effect of the statement on the third party to defend against what we believed was going to be a claim that the government didn't investigate its case properly. But Stephanie Rusneck didn't testify to that. That is correct. All right. So Judge Nelson was asking whether this was beyond the scope of the direct, and the answer is yes. Yes, I agree. And also, hearsay was solicited. Hearsay testimony was solicited with the government knowing that it was going to be hearsay statements. The government solicited this information for the two statements I asserted. I believe that Your Honor would be correct. But we believe it was admissible for an alternative purpose. However, as this is a plain error standard on this particular issue, because defense counsel let the information come in without objection and then waited until the beginning of the redirect to even raise the issue and never raised it as a hearsay issue. Had he raised it as a hearsay issue. I think you're right that this is plain error. We also tend to agree that it's error. So explain to me why, I mean, why doesn't this affect his constitutional rights or why shouldn't we find that this is an error warranting reversal? And specifically, why isn't it a confrontation clause problem? Your Honor, in looking at the confrontation clause problem, the court would have to look at to see if this was, again, plain error. But even under the more broad standard, which the government did mention in their brief, whether or not it was harmless beyond a reasonable doubt. And in doing so, the court would have to decide what was the effect on the verdict. Did this one little patch of testimony affect the verdict? But then it was referred to in closing argument against the admonition or the rule that the judge had laid out at the outset. But again, the information came in without objection and without limiting instructions from the court at that point. But the original agreement, as I understand it, was that they weren't going to say in closing argument that she was corroborating, that his statement wasn't corroborated. And they said exactly that. Actually, what the government said, what the agreement was is the government would not argue that there was no corroboration of the defendant's statement. And what the government argued was that her statement contradicted it. Well, that's worse than not corroborating. Obviously. I mean, incorporated in contradicting is not corroborating. But in determining whether or not the error was harmless or not, what this court has decided, has set forth in its rules, is that you're to assume the damaging potential of the requested information was fully realized. That is, that defense counsel was then allowed to bring in what he wanted to on redirect and then determine whether it's clear that it was harmless beyond reasonable doubt, whether or not it affected the verdict. And in this case, had defense counsel been allowed to bring out what they claim now was only going to be other people were at the house, or even more specifically, Mr. Chamberlain had lots of access to the computer and could have possibly done this. Then her testimony that she had maintained all along that she didn't know how this information came in would have been admissible as impeachment evidence. Further, her evidence was really cumulative on this particular issue because her husband testified to this as well. But obviously the defendant will say, I didn't do it. But here, she would be the one person to corroborate. Isn't it particularly damaging that the defendant's own wife won't corroborate his story? There's a difference between a corroborating witness who actually is non-biased and has corroboration for the information itself and a witness who is married to the defendant, has stated they're still together, she still loves him, and is clearly biased and has absolutely no information other than her own testimony to say that other people were at the house. But even so, the court did allow, redirect, and allowed the information by inference that the defendant wanted to actually come in. The defendant wanted basically to get in to say other people were at the house. Well, if that's true, then the statement in the closing argument was inaccurate, i.e., that she said that she didn't corroborate. I don't remember exactly what the statement was, but it was to the effect that she agreed there was nobody in the house. Well, she did make that statement. That statement was accurate that the government made. The witness made? The witness. I got it. Yes. Do you want to know, we didn't talk, you're free to make your argument, but we didn't talk at all about the supervisory release conditions. Yes. And, I mean, I gather you agree that they have to be redone. Yes. But substantively, the provision about him not having anything to do with any children under 18 except with probation agreement, isn't that a little over the top for somebody who has children? And when we're dealing only with child pornography and with no indication that he has ever touched a child? Well, two things on that. One, the government has conceded that that condition needs to be miranded. But not substantively, as I understand it. Well, the second part of that is. Am I right? I mean, it wouldn't be terribly efficient for us to let that go back and then reinstitute it in the words of the written statement and then come back up here to challenge substantively. It seems to me we should deal with it now. I agree, Your Honor. But in this particular case, there was information that would lead us to believe that there is a need, even for this restriction with his own children. On the computer, there was one, his laptop, over 324 images with prepubescent minor female children. But these are pictures, though. They're pictures. I mean, there is a raging dispute, as you probably know. And it's not really much of a dispute. It's a rather one-sided dispute about whether people who have no history, who watch child pornography but have no history of molesting children are actually a danger. I know there is one report that the government relies on all the time. But my understanding, and I intend to go back and look at this, and it hasn't really been briefed, is that the weight of the scientific evidence is to the contrary. And at least it should have to be justified. Yes, which is why it should be remanded for the court, for the district court to review this issue carefully. Substantively. Substantively. And you agree that it needs to be remanded? Yes. And just so I'm clear, this is number eight, is that right? This is the one you brought up in your 28-J letter? Or is this a different one? It's a file in the 28-J letter. Oh, sorry, different case. Apologize. Yes, this would be the special condition number eight. Okay. But, yes, we've agreed it needs to go back. But there is reason for it. Given the types of pornography in the case that was found on his computer and the age of his children. Well, but that makes an assumption about the connection between the two, which it seems to me needs to be justified. Which the district court can do with an evidentiary hearing. Okay. All right. But you're assuming that that's going to happen. And so if we say it's going to happen, that's okay. But I remind you, all of these conditions came in without any objection at all. In fact ---- But if we remand it down, then at that point there's a new record that the district court is going to look at. Yes. Is that a standard condition in a lot of these cases? Do you know? I believe it is. I think it's standard, but hotly contested. And some disrepute. But we have also asked the court to remand on the possession and viewing of materials depicting sexually explicit conduct. I'm sorry. For the court to narrow that. The condition number five, the possession of viewing materials depicting sexually explicit conduct. Because we feel under the Ganarchy case, we agree that it's too broad. And we've agreed it should be remanded. So correct me if I'm wrong. I have special conditions two through eight need to be remanded to conform the oral to the written statements. And then as to five and eight, they need to be reconsidered substantively. Is that an accurate state of the record? That's the government's position. Do you want to address the other side questions, the suspicionless searches substantively? The special condition number seven. I take it the government's position is no, that's okay. That does not need to be reviewed substantively. Yes, Your Honor. As amended so that it conforms with the oral pronouncement, this court has held that it is not required that there be reasonable suspicion. This is the type of evidence on a computer that is not readily seen in plain view. So, therefore, the courts have held that it's not necessary to have reasonable suspicion, given the type of offense and the need to make sure that he's not falling back in that track and re-offending. Is the condition limited to the computer? It searches all around, Your Honor. It's not limited to the computer. It's not limited just to the computer. So that's not an explanation. I mean, I thought it was okay to have this in general, but the computer can't be the explanation. However, child porn can be hidden and held in various concealed areas and not readily seen by a probation officer just stopping by to visit, and that is why, in this particular case, it is merited that there not be a requirement of reasonable suspicion. Okay. Thank you very much. If the Court has no further questions, the government will submit on the brief and ask you to affirm the conviction. Thank you. Your Honor, addressing the confrontation clause violation, this issue was preserved. The magic words, confrontation clause, are not required. The defense counsel said, the prosecutor's question opens the door for me to ask, do you know anyone else who stayed at the house? Why can they do that? Leaving that impression, and I can't correct it. It leaves the wrong impression with the jury, and it leaves me landlocked. If the Court applies plain error, however, it did affect his substantial rights. What substantial right? His Sixth Amendment right? Yes. Well, if we're addressing the confrontation clause, his right to cross-examine, because the testimony completely gutted the defense, her testimony as it came out appeared to contradict his. But there's a second problem, which is whether this defense had any chance of succeeding. I mean, as to — and now, you're right that it depends — it may well depend on what standard of review we apply to it. But if we were looking at it as plain error, and the burden on you was to demonstrate that the notion — I mean, especially given the vagueness with which she was going to testify, even if she did testify, which was something to the effect of there were more people in the house who, you know, maybe could have accessed it. But as I think Judge Nelson said earlier, there were three computers, not one. There was a period of time, a fairly lengthy period of time, that the documents appeared on the computer to begin with. So there would have to be somebody who was accessing all three computers and putting this clean-up app on it and doing it over a four-year period of time. I mean, is that basically accurate? I see that my time has run out. Go ahead. Go ahead. Your Honor, I think the fact that it's on three computers, including his mother-in-law's computer and the family computer, actually cuts the other way. And when the government brought out this idea of downloaders — But it can't cut the other way as to Sergeant Chamberlain. It could cut the other way, perhaps, as to someone else in the house, which is a pretty limited number of people — his wife, his baby. Maybe the baby crawled out of the crib. Was that a defense? That was not the defense, Your Honor. The fact that the CCleaner was only on the defendant's laptop really cuts against this idea of download and deleters. And so either he was trying to conceal the evidence or he wasn't. And the fact is that the government — Or maybe those who access child pornography are not always as careful as they want to be.  I'm sorry. I don't understand how the fact that it's on three computers cuts against the notion that it had to be somebody who was there an awful lot and who had access to not just one computer but three computers. That's true, Your Honor. There's no evidence that any of the computers were unavailable to visitors. And the defendant did testify that Sergeant Chamberlain and others, but especially Sergeant Chamberlain, was over-frequently, could have had access, did, in fact, often go on the defendant's computer. So although it maybe wasn't the best defense, it did leave the possibility that the jury could have concluded, look, somebody else had access, and that it wouldn't have met the reasonable doubt standard. So you're saying if we thought it was not plain error and if we thought it was a confrontation clause problem, we would therefore do it on a beyond a reasonable doubt harmless error and it might meet that. That's right, Your Honor. Although for the reasons I've stated, I think it satisfies the plain error standard, particularly because her testimony contradicted his. Okay. Thank you very much. Thank you. I'm thankful for your argument. The case of United States v. Fresnac is submitted.
judges: Berzon, Nelson, Lee